IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID DESPOT,                          )
                    Plaintiff,         )
                                       )
    vs                                 )          Civil Action No. 15-1672
                                       )          Judge Bissoon
THE BALTIMORE LIFE INSURANCE CO.,      )          Magistrate Judge Mitchell
et al.,                                )
                    Defendants.        )

I.    <u>Recommendation</u>

        It is respectfully recommended that the Motion to Dismiss Plaintiff's Amended

Complaint filed by defendant the Baltimore Life Insurance Co., Inc. (ECF No. 62) be granted.  It

is further recommended that the motion to dismiss filed by defendant Microsoft Corp. (ECF No.

22), as joined in by defendant Yahoo!, Inc. (ECF No. 32) and as supplemented (ECF Nos. 60, 61,

67), be granted.  It is further recommended that the motion to dismiss filed by defendant

Casetext, Inc. (ECF No. 35), as supplemented (ECF No. 56), be granted.  It is further

recommended that the motion to dismiss filed by defendant Portfolio Media, Inc. (ECF No. 40),

as supplemented (ECF No. 53), be granted.  It is further recommended that the motion to dismiss

the Amended Complaint filed by defendant Google, Inc. (ECF No. 57), as supplemented (ECF

No. 66), be granted.  It is further recommended that defendants Justicia.com/Justicia, Inc.,

Leagle.com/Leagle, Inc., Pacermonitor.com/Pacermonitor/Harros, LLC and RFC Express be

dismissed from this case based upon Plaintiff's failure to make timely service.

II.   <u>Report</u>

        Plaintiff, David Despot, has filed an Amended Complaint against two sets of defendants.

First, Plaintiff asserts eleven claims of employment discrimination and related causes of action

against the Baltimore Life Insurance Company, Inc. ("BLIC")[1] on the basis of retaliation, age, disability and equal pay, all arising out of BLIC's decision not to employ him after engaging in three interviews with him, allegedly because he revealed that he had sued previous employers for discriminatory acts.  He invokes Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 (ADEA), the Pennsylvania Human Relations Act, 43 P.S. §§ 951-63 (PHRA), the Americans With Disabilities Act, 42 U.S.C. §§ 12101-12117 (ADA), the First Amendment to the United States Constitution, and the Equal Pay Act, 29 U.S.C. § 206.  In addition, he purports to allege five Pennsylvania state law claims: "reprisal for engaging in protected activities," negligent misrepresentation, intentional misrepresentation, negligence and intentional infliction of emotional distress (IIED).

Second, he has named nine defendants who provide on-line research services: Google, Inc. (Google), Microsoft Corp./Bing (Microsoft), Yahoo!, Inc. (Yahoo!), Justicia.com/Justicia, Inc. (Justicia.com), Leagle.com/Leagle, Inc. (Leagle.com), Pacermonitor.com/ Pacermonitor/ Harros, LLC (Pacer), Law 360/Portfolio Media, Inc. (Portfolio Media), Casetext, Inc. (Casetext) and RFC Express (together, the "Search Engine Defendants").  Plaintiff's state law claims against the Search Engine Defendants (for IIED, defamation, unfair trade practices, misrepresentation, negligence and invasion of privacy) arise primarily out of his contention that, when his name is run through their services, the top results include links to filings from the many previous legal actions he has filed.  He also purports to raise employment retaliation discrimination claims against the Search Engine Defendants by alleging that he applied for positions with them and was not hired.

---

[1] BLIC indicates that Plaintiff has incorrectly identified it as "The Baltimore Life Insurance Company" and "The Baltimore Life Companies."  (ECF No. 62 at 1; ECF No. 64 at 1.)

Currently pending before the Court are six motions to dismiss the Amended Complaint, filed by various defendants, specifically BLIC and five of the Search Engine Defendants,[2] pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that he has failed to state claims upon which relief could be granted and that, with respect to his employment discrimination claims, he failed to present them to the Equal Employment Opportunity Commission (EEOC). Some of the defendants have supplemented their motions to dismiss the original complaint. Plaintiff has filed what he refers to as a response and some of the moving defendants have filed a reply brief. For the reasons that follow, all of the motions should be granted.

Facts Relating to BLIC

Plaintiff alleges that he approached BLIC in May 2015 and was invited to apply for the position of Agency Manager for SW Penn. On June 1, 2015, he attended his first interview with David Krupa, Assistant Vice President, Training and Development at BLIC. (Am. Compl. ¶¶ 24-26.)[3] On June 3, 2015, he completed the Pre-Employment Authorization and Disclosure Form and also sent an email to Krupa in which he explained why he had late payments on student loan accounts for his two children:

> From 8/21/2007 thru 10/20/2009, I was the Regional Director of Sales (IA, IL, IN, KY, MT, NC, ND, OH, PA, SD, TN, and WV) for American Income Life. I was one of the three very successful Regional Directors out of nine nationally. My salary was $104,000 and I was hitting maximum bonus level of $13,000 quarterly and $52,000 annually based upon very successful and consistent sales and recruiting results. Now, the unthinkable. At the annual company convention, there were sexually harassing comments made to my wife at breakfast by one of the other company directors when I was up at the fruit bar. To further complicate matters, this company director was with the company for 20 years and truly was a very close personal friend of the President. I had great relationships with my direct supervisor, all of the executive team at American Income, as well as with

---

[2] Plaintiff does not allege that he has served Justicia.com, Leagle.com, Pacer or RFC Express. Therefore, this Report and Recommendation recommends that these defendants be dismissed from the case based upon Plaintiff's failure to comply with Rule 4(m).
[3] ECF No. 51.

this particular director. However, this overall relationship immediately changed when I informed the company of what happened. Instead of the director and personal friend of the President confessing to what he did, the company ended up retaliating against me for bringing this information forward…. In turn as a direct result of this event, my income at the time dropped from about $152,000 to about $20,000 on unemployment and I became late on payments of student loan accounts for my two children. Currently, I am financially stable…

(Am. Compl. ¶ 27.)

Plaintiff states that, on June 9, 2015, during a second interview, Krupa told him that he had been cleared for hire by the Compliance Department in regard to his credit history. In addition, they discussed compensation plan options and potential starting dates. However, Krupa asked him to remove his description of the event involving what happened at American Income Life from the background report so that he "would not look like a victim to the Compliance Department." Plaintiff at first refused to remove the information, but eventually complied. (Am. Compl. ¶¶ 28-32.)

On June 15, 2015, Krupa informed Plaintiff that BLIC had discovered that he had filed at least five lawsuits against various companies. Plaintiff responded:

that these lawsuits involved the breaking of laws by companies that the Plaintiff worked for (or was going to work for). These cases, for examples, included negative impacts on the Plaintiff's employment (or as an employment candidate) for choosing not to support and be involved in deceptive sales practices, forgery of the Plaintiff's signature on an important financial document, several cases involving violations of EEOC laws and resulting retaliation against the Plaintiff, several cases involving EEOC retaliation against the Plaintiff just because the Plaintiff opposed what the Plaintiff believed to be violations of EEOC laws, several cases involving EEOC retaliation against the Plaintiff, just because the Plaintiff had filed an EEOC complaint and/or an EEOC-related lawsuit, and etc.))

(Am. Compl. ¶ 34.) Plaintiff reiterated this response in an email to Krupa dated June 16, 2015, and he included the statement that:

the only concern I have at this time is if [BLIC] would not finalize my appointment and hiring as Agency Manager for SW Penn as I would view this just as further EEOC retaliation against me by [BLIC]. To me, that would be really

disappointing and really wrong and I pray that this will not happen.

(Am. Compl. ¶ 35.)

On June 18, 2015, Plaintiff received a memo from Krupa which informed him that BLIC was not going to hire him for the position. According to Plaintiff, the memo listed three reasons for this decision: 1) on his employment application, Plaintiff did not disclose his prior employment with Nationwide in 2011 or his employment with Colonial; 2) his credit history was "below that of a [BLIC] manager"; and 3) BLIC viewed Plaintiff's email of June 16, 2015 as containing an implied threat. Plaintiff responds that: 1) he put his primary employment history on the form (which had only limited space) and Krupa said that would be fine; 2) as noted, Krupa told him on June 9, 2015 that he had been cleared for hire by the Compliance Department with respect to his credit history; and 3) "on the contrary, [BLIC] engaged in retaliatory discrimination against the Plaintiff." (Am. Compl. ¶¶ 36-38.)

<u>Facts Relating to the Search Engine Defendants</u>

Plaintiff states that, on May 5, 2015, he requested that:

eight legal information providers not remove the information/content from their websites (which shows court case records) but the Plaintiff's request was to immediately remove all documents and associated links with the Plaintiff's name (David Despot) and associated legal cases that are being linked to and appearing in any or all of the results of the search engines (Google, Microsoft Bing, Yahoo, etc.) as this is both directly and indirectly causing serious damages to the Plaintiff.

(Am. Compl. ¶ 50.) He provides numerous examples of the results obtained from searching his name in Google, Yahoo! and Microsoft, with case filings reported by various Search Engine Defendants. (Am. Compl. ¶ 52.) Plaintiff also alleges that, on April 25, 2015, he applied for employment with six of the Search Engine Defendants. (Am. Compl. ¶ 55.) He alleges that he is an "indirect employment applicant" with the remaining three (Portfolio Media, Casetext and RFC Express). (Am. Compl. ¶ 57.)

As all the moving defendants have observed, Plaintiff has filed many cases in various courts over the years.[4]  In <u>Despot v. Keystone Insurers Group, Inc.</u>, 2008 WL 3837395 (M.D. Pa. Aug. 13, 2008), Judge Rambo addressed a case in which Plaintiff sued Keystone, a former employer, its board of directors, officers and law firm by submitting a 36-count complaint that consisted of primarily labels, rather than facts.  The court observed that the only claims that were plausible were those asserting employment discrimination (he could not pursue claims that the defendants harmed shareholders, customers or other businesses), but that, with respect to these claims, he alleged no protected category and he did not allege that he completed the process of presenting the claims to the EEOC.  The court denied him leave to amend his complaint because "Despot was on notice of the deficiencies highlighted herein, courtesy of the federal courts in which his lawsuits have been adjudicated in the past."  <u>Id.</u> at *8.  The court then discussed four of Plaintiff's prior cases, all of which were dismissed for untimeliness, failure to exhaust administrative remedies and invocation of "causes of action" that are not recognized in the law. The court concluded as follows:

> The foregoing demonstrates Despot's pattern of filing conclusory complaints against former or prospective employers, a pattern replicated here. He routinely neglects the rules of pleading and procedure. He ignores judicial opinions informing him of the deficiencies of his claims. He uses labels to signify his causes of actions, instead of stating facts in support thereof. Some of his labels, he has been instructed, simply are not legal injuries. In this case, again, Despot engages in shotgun pleading that is totally insufficient under the Federal Rules of Civil Procedure and all precedent. Further, the sole federal employment discrimination claim attempted in this matter fails for two reasons, as described <u>supra</u>. It is evident from Despot's past litigation that he was well aware that pleading such a claim required a statement of membership in a protected class and a pleading of administrative exhaustion. He was on notice that failure to allege

---

[4] Casetext indicates that its own website reveals 10 lawsuits, BLIC refers specifically to 5, Google states that he has filed "over 40" and Microsoft contends that he has been a plaintiff in 45 cases and a defendant in 3 more.

these elements would render his complaint fatally flawed.

Additionally, Despot initiated this action by filing five separate law suits, each in a different state, all against the same Defendants, and all begun with an identical complaint. Three of the suits began in state court, requiring removal to the appropriate federal district court, then a transfer to this court in the interests of efficiency, uniformity, and the preservation of resources. He was on notice after <u>Ohio National Financial Services</u> that one court, and only one court, was necessary and appropriate to hear his claims. Here, he taxed the resources of five.

There is no call for this court to permit Despot to amend his complaint. He was on notice of the deficiencies contained therein, but filed it anyway. In light of his past experience in federal court, his pro se status does not save his complaint. Despot's federal claims, as addressed above, will be dismissed with prejudice.

<u>Id.</u> at *11-12.  <u>See also</u> <u>Despot v. Smith</u>, 2015 WL 8601627, at *2 (E.D. Tex. Dec. 14, 2015) (dismissing claims against his prior employer); <u>Despot v. Nationwide Ins.</u>, 2013 WL 4678857, at*3-4 (S.D. Ohio Aug. 30, 2013) (stating that Plaintiff's "behavior in this case evidences willful bad faith" and granting fee shifting; "plaintiff's willful conduct exhibits a complete disregard of the authority of this Court and for his obligations as a party to this lawsuit, and has prejudiced [the employer's] ability to defend this lawsuit."); <u>Despot v. American Income Life Ins. Co.</u>, 2012 WL 3070980, at *1 (S.D. Ohio July 30, 2012) (granting summary judgment against Plaintiff's "panoply of claims for discrimination and retaliation under federal and state law, arising from the termination of his employment"); <u>Despot v. Ohio Nat'l Fin. Servs., Inc.</u>, 2007 WL 1026368, at *3 (S.D. Ohio Mar. 30, 2007) (dismissing claims against former employer based on claim preclusion, because he had already made the same claims against the same defendants in state court and they had been dismissed).

Procedural History

Plaintiff filed this action on December 18, 2015 (ECF No. 1).  On February 16, 2016, Microsoft filed a motion to dismiss (ECF No. 22).  On February 23, 2016, Yahoo! filed a motion for joinder in Microsoft's motion to dismiss (ECF No. 32).  On February 23, 2016, Casetext filed

a motion to dismiss (ECF No. 35).  On February 25, 2016, BLIC filed an answer to the Complaint (ECF No. 37).  On February 26, 2016, motions to dismiss were filed by Portfolio Media (ECF No. 40) and Google (ECF No. 42).

On April 20, 2016, Plaintiff filed an Amended Complaint (ECF No. 51.)  The Amended Complaint contains eleven claims against BLIC: 1) Title VII retaliation; 2) PHRA retaliation; 3) equal protection First Amendment retaliation; 4) ADEA age discrimination and retaliation; 5) ADA disability discrimination and retaliation; 6) Equal Pay Act and retaliation; 7) "reprisal for engaging in protected activities"; 8) negligent misrepresentation; 9) intentional misrepresentation; 10) negligence; and 11) IIED.

The Amended Complaint alleges sixteen claims against the Search Engine Defendants: 1-4) laws by and enforced by the EEOC and "associated federal rights"; 5) online and internet defamation; 6) "character assassination"; 7) negligent misrepresentation; 8) intentional misrepresentation; 9-10) deceptive trade practices under the Pennsylvania Unfair Trade Practices and Consumer Protection Law; 11) negligence; 12) retaliation discrimination under Title VII; 13) retaliation discrimination under the PHRA; 14) IIED; 15) "conditional privilege/fair report privilege violations"; and 16) invasion of privacy.

In an order dated April 21, 2016, the Court indicated that the defendants could supplement their answers or motions to dismiss by May 12, 2016 and that Plaintiff could respond to the supplements by June 2, 2016 (ECF No. 52).  Supplements were filed by Portfolio Media (ECF No. 53), Casetext (ECF No. 56), Microsoft (ECF Nos. 60, 67), Yahoo! (ECF No. 61). Google filed a new motion to dismiss and brief (ECF Nos. 57, 58), which supersedes its original motion to dismiss.  Finally, BLIC filed a motion to dismiss the Amended Complaint (ECF No. 62).  On June 6, 2016, Plaintiff filed what he alleges to be a response to the various motions to

dismiss (ECF No. 65), but the document is in fact identical to the Amended Complaint other than its caption.[5]  Reply briefs have been submitted by Google (ECF No. 66) and BLIC (ECF No. 68).

Subject Matter Jurisdiction

The Amended Complaint asserts subject matter jurisdiction based upon diversity of citizenship, 28 U.S.C. § 1332(a), alleging that: Plaintiff "currently resides" in Pittsburgh, Pennsylvania; that BLIC "maintains its corporate offices" in Owing Mills, Maryland; that Google "maintains its corporate offices" in Mountain View, California; that Microsoft "maintains its corporate offices" in Redmond, Washington; that Yahoo! "maintains its corporate offices" in Sunnyvale, California; that Justicia.com "maintains its corporate offices" in Mountain View, California; that Leagle.com "maintains its corporate offices" in Bentonville, Arkansas; that Pacer "maintains its corporate offices" in New York, New York; that Portfolio Media "maintains its corporate offices" in New York, New York; that Casetext and RFC Express "maintains their corporate offices" in an unknown location; and that the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.  (Am. Compl. ¶¶ 10-23.)  These statements are incomplete and incorrect as a matter of law, because the proper question is not where a corporation "maintains its corporate offices" but where it is incorporated <u>and</u> where it has its principal place of business.  28 U.S.C. § 1332(c)(1).

However, a district court has an independent obligation to determine whether subject matter jurisdiction exists, even if its jurisdiction is not challenged.  See <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 514 (2006).  Based upon the allegations of the Amended Complaint, it is clear that federal question subject matter jurisdiction exists in this case because Plaintiff invokes Title VII and other federal employment discrimination laws, 28 U.S.C. § 1331.  As the Supreme Court has

_____

[5] The caption also states that it includes an affidavit from Plaintiff, but there is no affidavit attached.

held, "when federal law creates a private right of action and furnishes the substantive rules of decision, the claim arises under federal law, and district courts possess federal-question jurisdiction under § 1331." <u>Mims v. Arrow Fin. Servs., LLC</u>, 132 S. Ct. 740, 748-49 (2012). In addition, supplemental jurisdiction may be asserted over Plaintiff's state law claims, which constitute "other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

<u>Standard of Review for Motions to Dismiss</u>

The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Iqbal</u>, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. <u>Id.</u> at 679. The Court of Appeals has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no

more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." <u>Id.</u> This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

<u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011).

The Court of Appeals has explained that: "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." <u>Mayer v. Belichick</u>, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted). Defendants have cited some of Plaintiff's prior cases, which are all matters of public record. In addition, BLIC has attached to its motion Plaintiff's charge of discrimination filed with the EEOC, which Plaintiff cites in the Amended Complaint (ECF No. 51 ¶ 4.)[6] Plaintiff has not disputed the authenticity or accuracy of this document. Thus, it may be considered in determining whether Plaintiff has stated a claim upon which relief may be granted.

<u>Motion to Dismiss by BLIC</u>

BLIC argues that: 1) Count I (Title VII) fails to state a claim because Plaintiff alleges no protected group to which he belongs, does not allege that he was qualified for the position at BLIC or that it remained open or was filled in a manner giving rise to an inference of discrimination; he alleged no protected group in his EEOC charge; he claims to have been retaliated against for having challenged discriminatory conduct at prior employers but his

---

[6] Plaintiff alleges that the charge also named Google, Microsoft, Yahoo!, Justicia.com, Leagle.com and Pacer. However, the document submitted by BLIC names only BLIC as a respondent. In addition, Plaintiff states that, on September 22, 2015, he received a notice of right to sue letter from the EEOC only with respect to BLIC. (Am. Compl. ¶ 5.)

previous litigation shows he had no good-faith, reasonable belief that such discrimination occurred; and his conclusory allegations about causation do not even state that BLIC knew about his alleged prior protected conduct; 2) Count II (PHRA) fails to state a claim for the same reasons; 3) Count III (equal protection First Amendment retaliation) fails to state a claim because BLIC is a private actor; 4) Count IV (ADEA) fails to state a claim because he does not even indicate his age (and did not indicate it to the EEOC), and he does not allege any good-faith belief that a violation of the ADEA occurred for retaliation purposes; 5) Count V (ADA) fails to state a claim because he alleges no disability (and did not allege any before the EEOC), he does not allege that engaged in protected activity or any causal link; 6) Count VI (Equal Pay Act) fails to state a claim because he was never hired, he does not allege he received unequal pay based on his sex, that he engaged in protected activity or that there is a causal link; 7) Count VII (reprisal for engaging in protected activity) fails to state a claim because there is no such cause of action under Pennsylvania law; 8) Count VIII (negligent misrepresentation) fails to state a claim because he identifies no facts that BLIC misrepresented to him or any material ones upon which he relied, and the economic loss doctrine bars tort claims alleging only economic loss; 9) Count IX (intentional misrepresentation) fails to state a claim for the same reasons as the negligent misrepresentation claim, plus Plaintiff fails to meet the pleading requirements for fraud of Rule 9(b); 10) Count X (negligence) fails to state a claim because BLIC owed him no duty and breached no duty, at-will employment doctrine bars such claims and they also barred by the economic loss doctrine; and 11) Count XI (intentional infliction of emotional distress, IIED) fails to state a claim because he does not allege that BLIC engaged in outrageous conduct and such conduct almost never arises in an employment situation, and he alleges no severe emotional distress or physical harm.

As noted above, although Plaintiff has filed what he refers to as "Response to Answer and All Motions to Dismiss and All Supplements AND Affidavit from Plaintiff" (ECF No. 65), the document is a copy of the Amended Complaint, but for the caption and first two paragraphs. Contrary to the caption, there is no affidavit from Plaintiff attached. In a reply brief (ECF No. 68), BLIC notes these facts and reiterates that its motion to dismiss should be granted for the reasons identified in its brief.

Counts I and II: Title VII and PHRA Claims

Title VII provides that it is an unlawful employment practice for an employer to discriminate against an individual with respect to conditions of employment because of his race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). In addition, Title VII provides that it is an unlawful employment practice to retaliate against an individual for having opposed any practice made unlawful under the statute or for having made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under the statute. 42 U.S.C. § 2000e-3(a). The PHRA similarly prohibits such forms of discrimination. 43 P.S. § 955(a) (discrimination based upon protected categories); § 955(d) (retaliation discrimination).

In the absence of direct evidence of discrimination, a plaintiff may establish a prima facie case of discrimination indirectly following the shifting burden analysis set forth by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973). Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278-79 (3d Cir. 2000). This model also applies to actions brought pursuant to the PHRA. See Weston v. Commonwealth of Pa., 251 F.3d 420, 425 n.3 (3d Cir. 2001).

If the employee presents a prima facie case of discrimination, the employer must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." McDonnell Douglas, 411 U.S. at 802. If the employer specifies a reason for its action, the

employee must have an opportunity to prove the employer's reason for the adverse employment action was a pretext for unlawful discrimination.  Id. at 804.  The Court of Appeals for the Third Circuit has stated that:

> [T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder to reasonably infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).

Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted).

The Court of Appeals has stated that:

> To establish a prima facie case of retaliation, a plaintiff must show that: (1) he or she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneously with the protected activity; and (3) a causal link exists between the protected activity and the adverse employment action.

Weston, 251 F.3d at 430 (citations omitted).

Exhaustion of Administrative Remedies

Prior to bringing suit, a plaintiff must exhaust administrative remedies by filing a charge of discrimination with the EEOC.  42 U.S.C. § 2000e-5(b), (e)(1), (f)(1).  Furthermore, "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Webb v. City of Phila., 562 F.3d 256, 263 (3d Cir. 2009) (citation omitted).

BLIC argues that Plaintiff's EEOC charge did not identify any protected group to which he belongs and for which he allegedly filed charges.  Rather, the only box checked on the form is "retaliation" and BLIC contends that the charges do not contain information suggesting that any type of discrimination occurred which is fairly within the scope of the EEOC complaint or the investigation arising therefrom.

As BLIC argues, Plaintiff did not allege a claim a claim for discrimination before the

EEOC on the basis of any protected class identified by Title VII (his race, color, religion, sex, or

national origin).  In addition, he does not present such claims before this Court either.  Therefore,

to the extent that he intended to state such claims, he has failed to do so.

In the charge of discrimination, Plaintiff stated that:

On or about 05/25/2015, I sought employment opportunities with [BLIC].  On or
about 06/01/2015, David Krupa, AVP Career Agency Sales Group interviewed
me for the position of Agency Manager for SW Pennsylvania.  On or about
06/03/2015, I completed and sent the Pre-Employment Authorization and
Disclosure Form as an attachment to an email to Mr. Krupa.  I disclosed that a
former employer retaliated against me for having complained about sexual
harassment leveled against my spouse at a company sponsored event by company
employees, as well as [] discussing my criminal and credit background.  I
advanced through the process and had my second interview with Mr. Krupa on or
about 06/09/2015.  At the second interview, Mr. Krupa asked me to remove the
retaliation event from the Candidate Information Regarding Background Reports.
I refused to do so.  Mr. Krupa confirmed that I was cleared for hire by the
Compliance Department in regards to my credit history.  Also during the second
interview, Mr. Krupa asked me to revise my Candidate Information Regarding
Background Reports addressing the retaliatory discrimination from my former
employer, so I would not look like a victim, which may be construed negatively
by [BLIC].  We also discussed two compensation plan options and a potential
start date during the week of 06/22/2015.  On or about 06/10/2015, I emailed Mr.
Krupa with a revised Candidate Information Regarding Background Reports as
requested.  Mr. Krupa also sent me an email regarding the compensation plan and
confirmed that we would meet on Monday, 06/15/2015.  On or about 06/15/2015,
I advanced to the third interview (hiring interview) with Mr. Krupa when he
brought up my background check for having filed at least 5 lawsuits against
various companies.  I informed him that some were based upon EEOC laws being
violated and that retaliation against me took place.  I followed-up with an email
communication detailing the same, but more explicitly to Mr. Krupa's attention
on or about 06/16/2015 and hoped that this would not negatively impact my
candidacy for the position.  On or about 06/18/2015, I submitted an email to Mr.
Krupa as a follow-up inquiry about the position.  Mr. Krupa emailed me back
informing me that [BLIC] has decided not to pursue me further as a candidate for
the SW Penn Manager position.

On or about 06/18/2015, Mr. Krupa sent me an email stating 3 factors for my not
being considered further for the SW Penn Manager's position.  The first factor
stated that my application failed to disclose my employment with Nationwide in
2011 or my employment with Colonial.  The second factor stated that my credit

history is generally below that of a Baltimore Life Manager. The third factor stated that my correspondence of 06/16/2015 contained language which implied that if we do not hire you, you would view it as some form of retaliation for whatever reason.

On or about 06/25/2015, in a letter from Jennifer B. Sheehan, Esquire, Assistant Vice President and General Counsel in response to my email of 06/19/2015, stated that [BLIC] stood by the original decision of not pursuing my candidacy further for the SW Penn Manager's position.

I believe that [BLIC] retaliated against me for having disclosed that I complained about EEOC matters in the past against a former employer and that it discovered through a background check that I had done so on numerous occasions, and that they relied upon this toward discontinuing my candidacy for employment and non-selection as the SW Penn Manager, in violation of … Title VII.

(ECF No. 64, Ex. A at 1-2.)

Plaintiff argues that his EEOC charge indicates that, during the interview process, he informed BLIC that he had previously sued a prior employer for an act of discriminatory retaliation and that BLIC then retaliated against him by not hiring him for the position thereafter. This would be sufficient to put the EEOC on notice of a claim of retaliatory failure to hire discrimination. However, Plaintiff's allegations fail to state a claim for this cause of action.

In a general sense, Plaintiff is correct that a prospective employer engages in retaliation if it refuses to hire a job applicant because the applicant had filed an EEOC charge or discrimination suit against a previous employer. See McMenemy v. City of Rochester, 241 F.3d 279, 284 (2d Cir. 2001) ("Title VII protects an employee from *any* employer, present or future, who retaliates against him because of his prior or ongoing opposition to an unlawful employment practice or participation in Title VII proceedings.") See also Flowers v. Columbia College Chicago, 397 F.3d 532, 533 (7th Cir. 2005); Christopher v. Stouder Mem. Hosp., 936 F.2d 870, 873-74 (6th Cir. 1991);

<u>Ghirardelli v. McAvey Sales & Service, Inc.</u>, 287 F. Supp. 2d 379, 386-87 (S.D.N.Y. 2003), <u>aff'd mem.</u>, 98 F. App'x 909 (2d Cir. 2004). <u>See generally</u> EEOC Compliance Manual §§ 8-II(B)(3)(d), 8-II(C)(4).

However, as BLIC argues, Plaintiff has failed to allege that he engaged in protected activity, that is, he was acting under a "good faith, reasonable belief that a violation existed." <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1075, 1085 (3d Cir. 1996). "Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." <u>Moore v. City of Phila.</u>, 461 F.3d 331, 341 (3d Cir. 2006).

BLIC notes that Plaintiff alleges that he generally protested the alleged discriminatory and illegal conduct of other companies and that BLIC retaliated against him for the same. However, BLIC argues that Plaintiff's serial filing of lawsuits against numerous employers and prospective employers, all of which have dismissed based upon his failure to state a claim, or to follow court directives, or to exhaust his administrative remedies, preclude him from presenting his activity as protected.[7]

In addition, Plaintiff's own allegations undermine his claim that the reason that BLIC did not hire him was because it learned of his prior litigation. Pursuant to the Supreme Court's holdings in <u>Twombly</u> and <u>Iqbal</u>, the Court is required to accept <u>factual allegations</u> made by a plaintiff, but not <u>legal conclusions</u>. Plaintiff's Amended Complaint alleges: that BLIC asked him

_____

[7] Indeed, Plaintiff's lawsuit against American Income Life, which included the allegation (among many others) that he was retaliated against for complaining that his wife had been subjected to an inappropriate sexual comment by an AIL sales director at a convention in May 2009, was dismissed in July 2012 and the court explicitly held that his complaint about this single incident involving his wife (a non-employee) did not fall within the scope of Title VII-protected activity. <u>American Income Life</u>, 2012 WL 3070980, at *1, 8-9.

about at least five previous lawsuits he had failed alleging discrimination by prior employers (or prospective employer), that he notified BLIC that he would consider BLIC's decision not to hire him as a form of retaliation, that BLIC responded to this message by informing him that it viewed the statement as an implied threat and that it did not conduct business by threatening others or want its existing or prospective managers to take this approach, that BLIC did not hire him, and that he sued BLIC for retaliation. He also alleges that BLIC's actions constituted retaliation discrimination, but this is a legal conclusion which must be excised from the Amended Complaint.

In other words, Plaintiff has not merely alleged that BLIC became aware of his prior lawsuits alleging employment discrimination, but that "the only concern I have at this time is if [BLIC] would not finalize my appointment and hiring as Agency Manager for SW Penn as I would view this just as further EEOC retaliation against me by [BLIC]" and that BLIC informed him that this statement was viewed as an implied threat to sue BLIC, which is exactly what has occurred. He does not allege that BLIC acted unreasonably in construing his message as an implied threat, and this would be a difficult position to maintain based on the allegations of this case and Plaintiff's long history of filing lawsuits. Thus, on the face of his Amended Complaint, he has pleaded himself out of court. See Alja-Iz v. U.S. Virgin Islands Dept. of Educ., 626 F. App'x 44, 47 (3d Cir. 2015) (employee who alleged that department made its hiring decision before he purportedly engaged in protected activity of filing a complaint could not state a claim for retaliation).[8]

---

[8] Nor could Plaintiff base his claim on a theory that his threat of litigation was the protected activity which preceded the adverse employment action of his not being hired by BLIC, Baloch v. Kempthorne, 550 F.3d 1191, 1198 (D.C. Cir. 2008), given that the only adverse employment action to which a job applicant may be subjected is the denial of employment. That is, and contrary to his position, he cannot refer to any actions taken by BLIC prior to his failure to be

Although Plaintiff has alleged that BLIC retaliated against him, he also indicates that

BLIC was reacting to learning that he had filed at least five lawsuits against prior employers and

that, unless BLIC finalized its plans to hire him, he would sue BLIC for discrimination as well.

Therefore, with respect to the Title VII and PHRA claims in Counts I and II, the motion to

dismiss filed by BLIC should be granted.

Count III: First Amendment Retaliation

In Count III, Plaintiff alleges a claim for First Amendment retaliation. BLIC moves to

dismiss this claim on the ground that it is not a state actor.

"To seek relief under the United States Constitution, a plaintiff must utilize the vehicle of

a claim under 42 U.S.C. § 1983 and may not assert claims for relief under the United States

Constitution directly." Providence Pediatric Med. DayCare, Inc. v. Alaigh, 112 F. Supp. 3d 234,

247 (D.N.J. 2015) (citation omitted). Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or any other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

"For a plaintiff to recover under § 1983, she must establish that the defendant acted under

color of state law to deprive the plaintiff of a right secured by the Constitution." Malleus v.

George, 641 F.3d 560, 563 (3d Cir. 2011) (citations omitted). The Supreme Court has long held

that "the under-color-of-state-law element of § 1983 excludes from its reach 'merely private

conduct, no matter how discriminatory or wrongful.'" American Mfrs. Mut. Ins. Co. v. Sullivan,

526 U.S. 40, 50 (1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)).

---

hired as the "unlawful employment practice" which gave him cause to threaten a lawsuit.

As BLIC observes, Plaintiff has not and cannot allege that BLIC is anything other than a private actor, which could not act under color of state law to deprive him of his constitutional rights.  Therefore, with respect to Count III, the motion to dismiss should be granted.

Count IV: ADEA Claim

In Count IV, Plaintiff alleges a claim of age discrimination and retaliation under the ADEA.  BLIC argues that he does not even identify his age[9] and that he did not have a good-faith, reasonable belief that an act of age discrimination occurred.  BLIC is correct: he does not allege facts to support age discrimination, did not allege it at all before the EEOC and does not connect any alleged act of age discrimination with his failure to be hired by BLIC.  Therefore, with respect to Count IV, the motion to dismiss filed by BLIC should be granted.

Count V: ADA Claim

In Count V, Plaintiff alleges a claim of disability discrimination and retaliation under the ADA.  BLIC argues that he does not even identify any disability and that he did not have a good-faith, reasonable belief that an act of disability discrimination occurred.  BLIC is correct: he does not allege facts to support disability discrimination, did not allege it at all before the EEOC and does not connect any alleged act of disability discrimination with his failure to be hired by BLIC.  Therefore, with respect to Count V, the motion to dismiss filed by BLIC should be granted.

Count VI: Equal Pay Act Claim

In Count VI, Plaintiff alleges a claim of unequal pay and retaliation under the Equal Pay Act.  BLIC argues that Plaintiff was not even hired by BLIC and he therefore cannot – and does not – allege that he was received unequal pay because of his sex.  BLIC is correct: he does not

---

[9] In point of fact, his EEOC charge indicated that he was born on March 13, 1960, which would have made him 55 years old when BLIC declined to hire him.  Nevertheless, he did not assert a claim of age discrimination in the charge.

allege that he was hired by BLIC or that he received unequal pay because of his sex.  Thus, he cannot state a claim under the Equal Pay Act.  See Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000).  Therefore, with respect to Count VI, the motion to dismiss filed by BLIC should be granted.

### Count VII: Reprisal for Engaging in Protected Activities

In Count VII, Plaintiff alleges what he calls "Reprisal for Engaging in Protected Activities."  BLIC moves to dismiss this claim, as there is no such cause of action under Pennsylvania law.  BLIC is correct and with respect to Count VII, its motion to dismiss should be granted.

### Count VIII: Negligent Misrepresentation

In Count VIII, Plaintiff alleges a claim for negligent misrepresentation.  BLIC moves to dismiss this count for failure to state a claim.

The Pennsylvania Supreme Court has held that: "Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270, 277 (Pa. 2005) (citation omitted).  BLIC argues that Plaintiff fails to identify any fact that was misrepresented to him, let alone a "material" fact upon which he relied to his detriment.  BLIC is correct and with respect to Count VIII, its motion to dismiss should be granted.

### Count IX: Intentional Misrepresentation

In Count IX, Plaintiff alleges a claim of intentional misrepresentation.  BLIC argues that he also fails to state a claim for this cause of action.

The Pennsylvania Supreme Court has held that:

The elements of intentional misrepresentation are as follows:
(1) A representation;
(2) which is material to the transaction at hand;
(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;
(4) with the intent of misleading another into relying on it;
(5) justifiable reliance on the misrepresentation; and,
(6) the resulting injury was proximately caused by the reliance.

Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999) (citing Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994)).  BLIC argues that Plaintiff has failed to point to any representation, much less one that was material, made falsely and with the intent that he rely upon it, nor does he allege that he actually did rely upon it to his detriment.  BLIC is correct and, with respect to Count IX, its motion to dismiss should be granted.

Count X: Negligence

In Count X, Plaintiff alleges a claim of negligence.  BLIC argues that he fails to state a claim for this tort.

"To establish a negligence claim, a plaintiff must prove "four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." Cox v. Wal-Mart Stores E., L.P., 350 F. App'x 741, 743 (3d Cir. 2009) (citation omitted).  Moreover, "[n]egligence is not a recognized exception to the at-will doctrine in Pennsylvania." Rutherfoord v. Presbyterian-Univ. Hosp., 612 A.2d 500, 509 (Pa. Super. 1992).  BLIC argues that it had no duty to Plaintiff, breached no duty and caused no damages and that negligence is not a recognized exception to the at-will doctrine. BLIC is correct and with respect to Count X, its motion to dismiss should be granted.

Count XI: IIED

In Count XI, Plaintiff alleges a claim of IIED.  BLIC argues that he fails to state a claim.

The Court of Appeals has stated that:

> The gravamen of the tort of intentional infliction of emotional distress is that the conduct complained of must be of an "extreme or outrageous type." <u>Rinehimer v. Luzerne County Community College</u>, 372 Pa. Super. 480, at 494, 539 A.2d 1298, at 1305 (1988). As a preliminary matter, it is for the court to determine if the defendant's conduct is so extreme as to permit recovery. <u>Krushinski v. Roadway Express</u>, 627 F. Supp. 934, 938 (M.D. Pa. 1985) (citing Restatement (Second) of Torts § 46 comment h). Pennsylvania courts have been chary to declare conduct "outrageous" so as to permit recovery for intentional infliction of emotional distress and have allowed recovery "only in limited circumstances where the conduct has been clearly outrageous." <u>Krushinski v. Roadway Express</u>, 627 F. Supp. at 938. It has been said that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." <u>Buczek v. First National Bank of Mifflintown</u>, 366 Pa. Super. 551, at 558, 531 A.2d 1122, at 1125.

> ***

> At the outset, it must be recognized that it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress. <u>Rinehimer v. Luzerne County Community College</u>, 372 Pa. Super. at 494, 539 A.2d at 1305. In the context of a dismissal, it has been noted that "while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event" and cannot provide a basis for recovery for intentional infliction of emotional distress. <u>Brieck v. Harbison–Walker Refractories</u>, 624 F. Supp. 363, 367 (W.D. Pa. 1985), <u>aff'd. in relevant part</u> 822 F.2d 52 (3d Cir. 1987). Moreover, courts applying Pennsylvania law have failed to find conduct outrageous where an employer deceived an employee into foregoing other employment, <u>Cautilli v. GAF Corp.</u>, 531 F. Supp. 71, 74 (E.D. Pa. 1982), or even where the employer engaged in a premeditated plan to force an employee to resign by making employment conditions more difficult. <u>Madreperla v. Williard Co.</u>, 606 F. Supp. 874, 880 (E.D. Pa. 1985).

<u>Cox v. Keystone Carbon Co.</u>, 861 F.2d 390, 395 (3d Cir. 1988) (footnotes omitted).

As BLIC notes, Plaintiff has not alleged outrageous behavior, but rather a typical employment claim which does not state a claim for IIED. Moreover, a plaintiff must suffer some type of physical harm due to the defendant's outrageous conduct. <u>Reedy v. Evanson</u>, 615 F.3d

197, 231 (3d Cir. 2010) (citation omitted).  Plaintiff makes no such allegations.  Therefore, with respect to Count XI, the motion to dismiss should be granted.

In summary, the motion to dismiss filed by BLIC should be granted in its entirety and Counts I-XI should be dismissed.

<u>Motions to Dismiss by the Search Engine Defendants</u>

As noted above, the Amended Complaint contains sixteen counts against the Search Engine Defendants and it begins anew with Count I, rather than continuing with Count XII after the eleven claims asserted against BLIC.  The first four are entitled "Violation of Laws By and Laws Enforced By the U.S. Equal Employment Opportunity Commission and Associated Federal Rights of the Plaintiff."  Count V is titled Online and Internet Defamation.  Count VI is titled Character Assassination.  Count VII alleges a claim of negligent misrepresentation.  Count VIII alleges a claim of intentional misrepresentation.  Count IX is titled Deceptive Trade Practices under Pennsylvania Unfair Trade Practices and Consumer Protection Law.  Count X is titled Unfair Trade Practices under Pennsylvania Unfair Trade Practices and Consumer Protection Law.  Count XI alleges a claim of negligence.  Count XII alleges a claim of retaliation under Title VII and "associated laws."  Count XIII alleges a claim of retaliation under the PHRA. Count XIV alleges a claim of IIED.  Count XV is titled Conditional Privilege/Fair Report Privilege Violations.  Finally, Count XVI alleges a claim of invasion of privacy.

Although the Search Engine Defendants have filed separate motions to dismiss, they raise many of the same issues.  Specifically, all of the motions contend that: 1) Plaintiff's state law claims are barred by the immunity provision of the Communications Decency Act, 47 U.S.C. § 230(c)(1) (CDA), which protects internet service providers who merely display the results of third-party sites; 2) Pennsylvania law similarly bars suits against internet providers, 73 P.S.

§ 201-3; 3) at least two of Plaintiff's "claims" – "character assassination" and "conditional privilege/fair report privilege violations" – do not exist as claims under Pennsylvania law; 4) with respect to his failure to hire employment discrimination claims, he never submitted them to the EEOC; and 5) because he does not allege that the search results are false, he cannot state a claim for defamation or unfair or deceptive trade acts or practices, he received no misrepresentations so he cannot state a claim for either negligent or intentional misrepresentation. In addition, various defendants argue that: 1) the First Amendment provides an absolute privilege to claims based on publishing public records; 2) he alleges no "outrageous behavior" necessary to state a claim for IIED; 3) he cannot allege an invasion of privacy claim based upon public records; and 4) injunctive relief is not available for private plaintiffs suing for unfair trade practices.

Communications Decency Act Immunity

The CDA states that:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

47 U.S.C. § 230(c)(1). An "interactive computer service" means "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server ...." 42 U.S.C. § 230(f)(2). Significantly, "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 42 U.S.C. § 230(e)(3).[10]

The Court of Appeals has explained:

> By its terms, § 230 provides immunity to AOL as a publisher or speaker of

---

[10] The Pennsylvania Unfair Trade Practices and Consumer Protection Law contains a similar provision exempting internet service providers from the coverage of the Act. 73 P.S. § 201-3.

information originating from another information content provider. The provision "precludes courts from entertaining claims that would place a computer service provider in a publisher's role," and therefore bars "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter content." Zeran v. America Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997); see also, e.g., Ben Ezra, Weinstein & Co. v. America Online, Inc., 206 F.3d 980, 986 (10th Cir. 2000) ("Congress clearly enacted § 230 to forbid the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions.").

Green v. America Online (AOL), 318 F.3d 465, 471 (3d Cir. 2003).

All of the Search Engine Defendants are interactive computer services, who merely display the results of searches of third-party sites. See, e.g., Holomaxx Techs. v. Microsoft Corp., 783 F. Supp. 2d 1097 (N.D. Cal. 2011) (Microsoft is an interactive computer service eligible for immunity under § 230); Parker v. Google, Inc., 422 F. Supp. 2d 492, 501 (E.D. Pa. 2006), aff'd, 242 F. App'x 833 (3d Cir. 2007) (same for Google); Obado v. Magedson, 2014 WL 3778261 (D.N.J. July 31, 2014), aff'd, 612 F. App'x 90 (3d Cir. 2015) (same for Yahoo!). Therefore, Plaintiff cannot maintain his state law claims of defamation, unfair trade practices, misrepresentation, negligence, IIED, invasion of privacy) against these defendants. With respect to Counts V, VII-X, XI, XIV and XVI, the motions to dismiss filed by Google, Microsoft, Casetext and Portfolio Media should be granted.

In addition, for the reasons cited above with respect to BLIC, Plaintiff has failed to state claims for negligence (Count XI), negligent misrepresentation (Count VII), intentional misrepresentation (Count VIII), and IIED (Count XIV). Plaintiff's allegations of "character assassination" (Count VI) should also be dismissed because Pennsylvania recognizes no such claim, and "Conditional Privilege/Fair Report Privilege Violations" (Count XV) does not state a cause of action. Rather, these two privileges can be defenses to claims of libel, slander and defamation. See Tucker v. Philadelphia Daily News, 757 A.2d 938, 946 (Pa. Super. 2000), aff'd

in part, rev'd in part on other grounds, 848 A.2d 113 (Pa. 2004).

Employment Discrimination Claims

In Counts XII and XIII, Plaintiff alleges that the Search Engine Defendants engaged in retaliatory discrimination in violation of Title VII and the PHRA, respectively, by failing to hire him after he applied for employment with them on April 25, 2015. The Search Engine Defendants contend that Plaintiff never presented any discrimination claims regarding them to the EEOC. This argument is meritorious.

Although Plaintiff alleges that he filed a charge of discrimination against BLIC, Google, Microsoft, Yahoo!, Justicia.com, Leagle.com and Pacer on July 23, 2015 (Am. Compl. ¶ 4), he indicates that he received a notice of right to sue letter from the EEOC dated September 22, 2015 only "in regards to [BLIC]." (Am. Compl. ¶ 5.) Thus, he has not alleged that he satisfied his prerequisites with respect to the six Search Engine Defendants (and he admits that he did not name the other three, Portfolio Media, Casetext or RFC Express, Am. Compl. ¶ 57). Moreover, BLIC has submitted his EEOC charge, which names only BLIC and not the Search Engine Defendants. (ECF No. 64 Ex. A.) Plaintiff does not dispute the accuracy of this document.

Plaintiff also alleges four counts of what he calls "Violation of Laws by and Laws Enforced by the U.S. Equal Employment Opportunity Commission and Associated Federal Rights of the Plaintiff" (Counts I-IV). These claims should be dismissed because, to the extent they allege something other than the retaliation claims in Counts XII-XIII, they do not state claims for recognized causes of action. The EEOC does not "make" laws and the laws it enforces are Title VII, the ADEA and the ADA. In summary, the motions to dismiss filed by Microsoft, Yahoo!, Casetext, Portfolio Media and Google should be granted in their entirety.

Remaining Defendants

Plaintiff has also named four additional Search Engine Defendants: Justicia.com, Leagle.com, Pacer and RFC Express. However, he has not alleged that he has made service upon these defendants and there is no evidence to indicate that he did so.

Federal Rule of Civil Procedure 4(m) requires that service of process be made within 90 days of the date of filing of a complaint. The Complaint was filed on December 18, 2015, and 90 days lapsed on March 17, 2016. Plaintiff has not alleged or demonstrated that he made timely service upon these defendants and more than 90 days have passed since the filing of the complaint. Therefore, it is recommended that defendants Justicia.com/Justicia, Inc., Leagle.com/Leagle, Inc., Pacermonitor.com/Pacermonitor/Harros, LLC and RFC Express be dismissed from this case based upon Plaintiff's failure to make timely service.

Therefore, it is recommended that the Motion to Dismiss Plaintiff's Amended Complaint filed by defendant the Baltimore Life Insurance Co., Inc. (ECF No. 62) be granted. It is further recommended that the motion to dismiss filed by defendant Microsoft Corp. (ECF No. 22), as joined in by defendant Yahoo!, Inc. (ECF No. 32) and as supplemented (ECF Nos. 60, 61, 67), be granted. It is further recommended that the motion to dismiss filed by defendant Casetext, Inc. (ECF No. 35), as supplemented (ECF No. 56), be granted. It is further recommended that the motion to dismiss filed by defendant Portfolio Media, Inc. (ECF No. 40), as supplemented (ECF No. 53), be granted. It is further recommended that the motion to dismiss the Amended Complaint filed by defendant Google, Inc. (ECF No. 57), as supplemented (ECF No. 66), be granted. It is further recommended that defendants Justicia.com/Justicia, Inc., Leagle.com/Leagle, Inc., Pacermonitor.com/Pacermonitor/Harros, LLC and RFC Express be dismissed from this case based upon Plaintiff's failure to make timely service.

Litigants who seek to challenge this Report and Recommendation must seek review by

the district judge by filing objections by July 12, 2016.  Any party opposing the objections shall

file a response by July 26, 2016.  Failure to file timely objections will waive the right of appeal.

Respectfully submitted,

s/Robert C. Mitchell_____
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: June 28, 2016

cc:    David Despot
      100 Elizabeth Drive
      Apt. 1102
      Pittsburgh, PA 15220