IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID DESPOT, )<br>        Plaintiff, )<br>   )<br>  vs )<br>   )<br>THE BALTIMORE LIFE INSURANCE CO., )<br>et al., )<br>        Defendants. ) | Civil Action No. 15-1672<br>Judge Bissoon<br>Magistrate Judge Mitchell |

I. Recommendation

It is respectfully recommended that the Motion for Attorney's Fees filed by defendant the Baltimore Life Insurance Co., Inc. (ECF No. 78) be granted and that fees and costs in the amount of $40,678.57 be awarded.

II. Report

Plaintiff, David Despot, brought this action, asserting eleven claims of employment discrimination and related causes of action against the Baltimore Life Insurance Company, Inc. ("BLIC")[1] on the basis of retaliation, age, disability and equal pay, all arising out of BLIC's decision not to employ him after engaging in three interviews with him, allegedly because he revealed that he had sued previous employers for discriminatory acts. He invoked Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 (ADEA), the Pennsylvania Human Relations Act, 43 P.S. §§ 951-63 (PHRA), the Americans With Disabilities Act, 42 U.S.C. §§ 12101-12117 (ADA), the First Amendment to the United States Constitution, and the Equal Pay Act, 29 U.S.C. § 206. In addition, he purported to allege five Pennsylvania state law claims: "reprisal for engaging in protected activities," negligent misrepresentation, intentional

---

[1] BLIC indicates that Plaintiff has incorrectly identified it as "The Baltimore Life Insurance Company" and "The Baltimore Life Companies." (ECF No. 62 at 1; ECF No. 64 at 1.)

misrepresentation, negligence and intentional infliction of emotional distress (IIED).

In addition, Plaintiff named nine defendants who provide on-line research services: Google, Inc. (Google), Microsoft Corp./Bing (Microsoft), Yahoo!, Inc. (Yahoo!), Justicia.com/Justicia, Inc. (Justicia.com), Leagle.com/Leagle, Inc. (Leagle.com), Pacermonitor.com/ Pacermonitor/ Harros, LLC (Pacer), Law 360/Portfolio Media, Inc. (Portfolio Media), Casetext, Inc. (Casetext) and RFC Express (together, the "Search Engine Defendants"). Plaintiff's state law claims against the Search Engine Defendants (for IIED, defamation, unfair trade practices, misrepresentation, negligence and invasion of privacy) arose primarily out of his contention that, when his name is run through their services, the top results include links to filings from the many previous legal actions he has filed. He also purported to raise employment retaliation discrimination claims against the Search Engine Defendants by alleging that he applied for positions with them and was not hired.

On June 28, 2016, a Report and Recommendation was filed (ECF No. 69), which recommended that all of the pending motions to dismiss filed by the various defendants be granted. Plaintiff filed objections (ECF Nos. 70), but on August 4, 2016, Judge Bissoon filed a Memorandum Order which adopted the Report and Recommendation, granted the motions to dismiss and dismissed the case (ECF No. 75). He then filed a "motion for further review" (ECF No. 77), which Judge Bissoon construed as a motion for reconsideration and denied on August 19, 2016 (ECF No. 80).

Currently pending before the Court is a motion for attorney's fees, filed by BLIC (ECF No. 78). For the reasons that follow, the motion should be granted.

Relevant Procedural History

Plaintiff filed this action on December 18, 2015 (ECF No. 1). On February 25, 2016,

BLIC filed an answer to the Complaint (ECF No. 37). On April 20, 2016, Plaintiff filed an Amended Complaint (ECF No. 51.) The Amended Complaint contained eleven claims against BLIC: 1) Title VII retaliation; 2) PHRA retaliation; 3) equal protection First Amendment retaliation; 4) ADEA age discrimination and retaliation; 5) ADA disability discrimination and retaliation; 6) Equal Pay Act and retaliation; 7) "reprisal for engaging in protected activities"; 8) negligent misrepresentation; 9) intentional misrepresentation; 10) negligence; and 11) IIED.

In an order dated April 21, 2016, the Court indicated that the defendants could supplement their answers or motions to dismiss by May 12, 2016 and that Plaintiff could respond to the supplements by June 2, 2016 (ECF No. 52). BLIC filed a motion to dismiss the Amended Complaint (ECF No. 62). On June 6, 2016, Plaintiff filed what he alleged to be a response to the various motions to dismiss (ECF No. 65), but the document was in fact identical to the Amended Complaint other than its caption.[2] A reply brief was filed BLIC on June 14, 2016 (ECF No. 68).

On June 28, 2016, a Report and Recommendation was filed (ECF No. 69), which recommended that all of the motions to dismiss be granted. Plaintiff objections on July 12, 2016 (ECF No. 70), to which BLIC responded on July 26, 2016 (ECF No. 73). On August 4, 2016, Judge Bissoon entered a Memorandum Order which granted the motions, adopted the Report and Recommendation and dismissed the case (ECF No. 75). On that same date, a judgment order was filed, entering judgment in favor of the defendants (ECF No. 76).

BLIC filed a motion for attorney's fees on August 18, 2016 (ECF No. 78). Plaintiff filed a response on August 30, 2016 (ECF No. 82). On September 21, 2016, an order was entered, directing BLIC to supplement its motion (ECF No. 83). BLIC filed its supplement on October 5, 2016 (ECF No. 84). Plaintiff filed what he deemed a response on October 11, 2016 (ECF No.

---

[2] The caption also stated that it included an affidavit from Plaintiff, but there was no affidavit attached.

87). A hearing was held on November 1, 2016 at 1:00 p.m. Although he received notice of the hearing, Plaintiff did not attend.[3]

Motion for Attorney's Fees

Title VII provides that: "In any action or proceeding under this title the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k). The Supreme Court, in adopting the rationale of two courts of appeals that fees are appropriately awarded to a defendant when an action has been found to be "unreasonable, frivolous, meritless or vexatious," added the following:

> We would qualify their words only by pointing out that the term "meritless" is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case, and that the term "vexatious" in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him. In sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.
>
> In applying these criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 421-22 (1978).

---

[3] On October 19, 2016, Plaintiff filed a "response" to the hearing notice, in which he notified the Court that he was not available at the scheduled time because he had "work responsibilities." He indicated that he could attend a hearing at 6:30 p.m. on a weekday or anytime on Saturday (ECF No. 88). In response, the Court notified all parties that the hearing would go forward as scheduled (ECF No. 89).

4

The Court of Appeals for the Third Circuit has stated that:

> We have relied on several factors in determining whether a plaintiff's unsuccessful civil rights claim was frivolous including whether the plaintiff established a prima facie case, the defendant offered to settle, the trial court dismissed the case prior to trial or the case continued until a trial on the merits. Other factors that courts have considered in determining if an action was frivolous include whether the question in issue was one of first impression requiring judicial resolution, the controversy is based sufficiently upon a real threat of injury to the plaintiff, the trial court has made a finding that the suit was frivolous under the Christiansburg guidelines, and the record supports such a finding. See Unity Ventures v. County of Lake, 894 F.2d 250, 253-54 (7th Cir. 1995). These considerations, however, are merely guidelines, not strict rules; thus "[d]eterminations regarding frivolity are to be made on a case-by-case basis." Sullivan v. School Bd., 773 F.2d 1182, 1189 (11th Cir. 1983).

Barnes Found. v. Twp. of Lower Merion, 242 F.3d 151, 158 (3d Cir. 2001) (citing E.E.O.C. v. L.B. Foster Co., 123 F.3d 746, 751 (3d Cir. 1997)).

BLIC argues that the other statutes under which Plaintiff brought suit contain similar fee-shifting provisions. See 42 U.S.C. § 1988(b) (permitting fee shifting to a prevailing party in a § 1983 suit); 29 U.S.C. §§ 216(b), 626(b) (same for ADEA claim); 42 U.S.C. § 12205 (same for ADA claim); 43 P.S. § 962(c)(4)(c.3) (same for PHRA claim). However, for ADEA claims, a finding of vexatious conduct or bad faith is required. See Blasi v. Pen Argyl Area Sch. Dist., 2014 WL 466247, at *5 (E.D. Pa. Sept. 19, 2014). And the PHRA provision states that:

> If after a trial held pursuant to subsection (c), the court of common pleas finds that a defendant has not engaged in or is not engaging in any unlawful discriminatory practice as defined in this act, the court may award attorney fees and costs to the prevailing defendant if the defendant proves that the complaint was brought in bad faith.

No trial was held in this case and this Court is not the Court of Common Pleas. BLIC has not argued that Plaintiff acted in bad faith or vexatiously. Therefore, the fee shifting provisions of the ADEA and PHRA do not apply.

BLIC argues that all six of the factors cited above apply in this case: Plaintiff failed to

5

establish a prima facie case, BLIC did not offer to settle, the case was dismissed prior to trial, the case did not involve an issue of first impression, the controversy did not pose a real threat of injury to Plaintiff, and his claims were frivolous. Plaintiff's response is to argue that his case had merit, in support of which he cites to an email message he received from a lawyer about his retaliation claims. In this message, which was dated August 8, 2015, the lawyer stated that: "we think you may have a good retaliation claim—if we can nail down that u were rejected for the prior Title VII suits. If we decide to take that case, it would be treated separately from the other case and we'd need to work out a retainer agreement." (ECF No. 70 Ex. A at 2.)

However, the attorney did not take the case and Plaintiff filed it pro se on December 18, 2015. Although this sequence of events does not necessarily mean that the attorney concluded that the case lacked merit, Plaintiff cannot rely on the attorney's preliminary assessment of the matter to demonstrate that the case was potentially meritorious.[4]

As explained in depth in the prior Report and Recommendation, Plaintiff has a long history of filing employment discrimination lawsuits against employers, former employers and potential employers, of which this case is the most recent example. In Despot v. Keystone Insurers Group, Inc., 2008 WL 3837395 (M.D. Pa. Aug. 13, 2008), Judge Rambo addressed a case in which Plaintiff sued Keystone, a former employer, its board of directors, officers and law firm by submitting a 36-count complaint that consisted of primarily labels, rather than facts. The court observed that the only claims that were plausible were those asserting employment discrimination (he could not pursue claims that the defendants harmed shareholders, customers or other businesses), but that, with respect to these claims, he alleged no protected category and

---

[4] It is noted that the attorney asked Plaintiff to provide "the rejection letter, docs and a narrative timeline," which indicates that he had not supplied these items previously and the attorney had only Plaintiff's version of events to consider.

6

he did not allege that he completed the process of presenting the claims to the EEOC. The court denied him leave to amend his complaint because "Despot was on notice of the deficiencies highlighted herein, courtesy of the federal courts in which his lawsuits have been adjudicated in the past." Id. at *8. The court then discussed four of Plaintiff's prior cases, all of which were dismissed for untimeliness, failure to exhaust administrative remedies and invocation of "causes of action" that are not recognized in the law. The court concluded as follows:

> The foregoing demonstrates Despot's pattern of filing conclusory complaints against former or prospective employers, a pattern replicated here. He routinely neglects the rules of pleading and procedure. He ignores judicial opinions informing him of the deficiencies of his claims. He uses labels to signify his causes of actions, instead of stating facts in support thereof. Some of his labels, he has been instructed, simply are not legal injuries. In this case, again, Despot engages in shotgun pleading that is totally insufficient under the Federal Rules of Civil Procedure and all precedent. Further, the sole federal employment discrimination claim attempted in this matter fails for two reasons, as described supra. It is evident from Despot's past litigation that he was well aware that pleading such a claim required a statement of membership in a protected class and a pleading of administrative exhaustion. He was on notice that failure to allege these elements would render his complaint fatally flawed.
>
> Additionally, Despot initiated this action by filing five separate law suits, each in a different state, all against the same Defendants, and all begun with an identical complaint. Three of the suits began in state court, requiring removal to the appropriate federal district court, then a transfer to this court in the interests of efficiency, uniformity, and the preservation of resources. He was on notice after Ohio National Financial Services that one court, and only one court, was necessary and appropriate to hear his claims. Here, he taxed the resources of five.
>
> There is no call for this court to permit Despot to amend his complaint. He was on notice of the deficiencies contained therein, but filed it anyway. In light of his past experience in federal court, his pro se status does not save his complaint. Despot's federal claims, as addressed above, will be dismissed with prejudice.

Id. at *11-12. See also Despot v. Smith, 2015 WL 8601627, at *2 (E.D. Tex. Dec. 14, 2015) (dismissing claims against his prior employer); Despot v. Nationwide Ins., 2013 WL 4678857, at *3-4 (S.D. Ohio Aug. 30, 2013) (stating that Plaintiff's "behavior in this case evidences willful bad faith" and imposing fees and costs as a discovery sanction; "plaintiff's willful conduct

7

exhibits a complete disregard of the authority of this Court and for his obligations as a party to this lawsuit, and has prejudiced [the employer's] ability to defend this lawsuit."); Despot v. American Income Life Ins. Co., 2012 WL 3070980, at *1 (S.D. Ohio July 30, 2012) (granting summary judgment against Plaintiff's "panoply of claims for discrimination and retaliation under federal and state law, arising from the termination of his employment"); Despot v. Ohio Nat'l Fin. Servs., Inc., 2007 WL 1026368, at *3 (S.D. Ohio Mar. 30, 2007) (dismissing claims against former employer based on claim preclusion, because he had already made the same claims against the same defendants in state court and they had been dismissed).

BLIC has demonstrated that all six of the factors apply in this case and therefore its request for fee shifting should be granted. The next inquiry is whether its request for fees is reasonable.

In Hensley v. Eckerhart, the United States Supreme Court held that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. 424, 433 (1983). The product of this calculation, referred to as the lodestar, is strongly presumed to yield a reasonable fee. Washington v. Philadelphia Cnty. Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing City of Burlington v. Dague, 505 U.S. 557 (1992)); Hensley, 461 U.S. at 434. A prevailing party seeking a fee award must demonstrate the reasonableness of the fees requested with sufficient proof of the hours worked and the rates claimed. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing Hensley, 461 U.S. at 433). Once the petitioning party has met its burden of reasonableness, the burden then shifts to the opposing party to "challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." Rode, 892 F.2d at 1183 (3d Cir. 1990). See Interfaith Community Org. v.

Honeywell Int'l, Inc., 426 F.3d 694, 703 n.5 (3d Cir. 2005). Although courts may exercise discretion in evaluating the reasonableness of a fee petition, absent specific evidence warranting a reduction in fees, a court may not reduce the hourly rate or hours requested. Washington, 89 F.3d at 1037; Smith v. Philadelphia Housing Authority, 107 F.3d 223, 225 (3d Cir. 1997).

"The general rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the community." Washington, 89 F.3d at 1035. BLIC contends that the hourly rates of Saul Ewing LLP attorneys Harriett Cooperman ($590 per hour for 2015/$620 per hour for 2016), Allison L. Feldstein ($450 per hour), and Michael J. Joyce ($320 per hour) are "...in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). To establish the reasonableness of their hourly rates, Ms. Cooperman, Ms. Feldstein and Mr. Joyce may rely upon their own declarations as well as "...representative [declarations] from attorneys in the community who possess comparable qualifications and skill." Student Public Interest Group v. AT&T Bell Lab., 842 F.2d 1436, 1447 (3d Cir. 1988). Furthermore, in most cases, a fee applicant's actual billing rates will, indeed, reflect market rates. Id. at 1445.

BLIC asserts that the attorneys at Saul Ewing LLP are national employment litigation attorneys with extensive experience litigating complex employment and civil rights claims on behalf of management before courts administrative agencies throughout the county, including this Court. They have attached declarations demonstrating that BLIC's attorneys have nearly 60 years of labor and employment law experience among them. (Cooperman Decl. ¶¶ 2-3; Feldstein Decl. ¶¶ 2-3.)[5] Both Ms. Cooperman and Ms. Feldstein have been recognized by their peers as outstanding labor and employment attorneys, with Ms. Cooperman also having been selected as

---

[5] ECF No. 84 Exs. 1, 2.

a Fellow in the American College of Trial Lawyers and the College of Labor and Employment Lawyers. (Cooperman Decl. ¶ 6; Feldstein Decl. ¶ 4.)

According to management-side labor and employment attorneys John J. Myers and Miranda N. Rapport, Ms. Cooperman, Ms. Feldstein, and Mr. Joyce are highly skilled and well-respected attorneys whose rates are within the range charged by attorneys with comparable skill, experience and reputation in the Pittsburgh legal community (Myers Decl. ¶¶ 8-12;[6] Rapport Decl. ¶¶ 7-12;[7] Feldstein Decl. ¶¶ 7-10).

BLIC further notes that it has paid Saul Ewing LLP these rates and has agreed to continue to pay these rates going forward. BLIC argues that there is no better comparable metric to the reasonableness of an attorney's fee in a specific case than the rate and number of hours that the client paid that attorney in that case. See Choike v.Slippery Rock Univ. of Pennsylvania of the State Sys. of Higher Educ., No. CIV.A. 06-622, 2007 WL 3120097, at *3 (W.D. Pa. Oct. 22, 2007).

Finally, fees for work performed by paralegals is considered part of an attorney's reasonable fees and are therefore compensable as part of a fee petition. Mizori v. Jenkins, 491 U.S. 274, 285 (1989). BLIC states that work performed by Paralegal Kimberly Crampton and Litigation Support Manager Shawn McClurg were integral to its successful defense of this case. (Feldstein Decl. ¶¶ 15-16.) Ms. Crampton is requesting an hourly rate of $265 per hour and Mr. McClurg of $250 per hour, both of which are comparable to the rates charged by paralegals and litigation support staff in the Pittsburgh area. (Feldstein Decl. ¶¶ 11-12.)

BLIC argues that, given the specialized knowledge and experience of the Saul Ewing LLP attorneys, the total number of hours billed in this case are eminently reasonable and reflect

---

[6] ECF No. 84 Ex. 3.
[7] ECF No. 84 Ex. 4.

an expedient amount of time for investigating and litigating a case in which the Plaintiff lodged more than ten different claims against BLIC (in two different Complaints), all of which had to be thoroughly researched and briefed prior to dismissal. Therefore, it argues that the total numbers of hours of 21.8 billed by Harriet Cooperman (Cooperman Decl. ¶ 7), 36.3 billed by Allison L. Feldstein (Feldstein Decl. ¶ 13); 28.7 billed by Michael Joyce; 0.7 billed by Paralegal Supervisor Kimberly S. Crampton; and 0.2 billed by Litigation Support Manager Shawn M. McClurg are reasonable and represent time necessary to successfully defend this matter. (See copies of Saul Ewing LLP's bills for all legal work performed in this matter, ECF No. 84 Ex. 5.)

BLIC also requests an award of costs and expenses in the amount of $1,435.57 for reasonable expenses incurred in defense of this matter. This amount includes costs for photocopying, filing documents with the court, mailing and serving documents, obtaining a Certificate of Good Standing for a pro hac vice motion, and Westlaw and PACER fees for legal research. These expenses were reasonably necessary for the successful defense of this case. It is well-established that costs and expenses such as these may be recovered as part of a reasonable attorney's fee. Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 195 F. App'x 93, 102 (3d Cir. 2006). See ECF No. 79 Ex. A (itemized description of the costs and expenses BLIC seeks).

BLIC's request for attorney's fees is reasonable. Its attorneys have demonstrated that their hourly rates are comparable to those in the community, as supported by their own affidavits and those of other lawyers in the community. Further, their motion is unopposed. The hours they spent on this case are reasonable, and therefore their request for fees and costs should be granted in full, that is $40,678.57, including costs in the amount of $1,435.57 (ECF No. 84 at 5-6).

Therefore, it is recommended that the motion for attorney's fees filed by defendant the

Baltimore Life Insurance Co., Inc. (ECF No. 78) be granted and that fees and costs in the amount of $40,678.57 be awarded.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by November 16, 2016  Any party opposing the objections shall file a response by November 302, 2016.  Failure to file timely objections will waive the right of appeal.

Respectfully submitted,

s/Robert C. Mitchell_____
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: November 2, 2016

cc:    David Despot
       100 Elizabeth Drive
       Apt. 1102
       Pittsburgh, PA 15220